**CLARK & MARKHAM LLP**
David R. Markham (SBN 071814)
dmarkham@clarkmarkham.com
R. Craig Clark (SBN 129219)
cclark@clarkmarkham.com
James M. Treglio (SBN 228077)
jtreglio@clarkmarkham.com
Laura M. Cotter (SBN 259445)
lcotter@clarkmarkham.com
600 B Street, Suite 2130
San Diego, California 92101
Tel: (619) 239 1321
Fax: (619) 239 5888

**UNITED EMPLOYEES LAW GROUP**
Walter Haines (SBN 071075)
65 Pine Ave, #312
Long Beach, CA 90802
Telephone: (877) 696-8378
Facsimile:  (562) 256-1006

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL KARRER, and SANTIAGO ESTRADA, individuals, on behalf of themselves, and all others similarly situated,<br><br>       Plaintiff,<br><br>    v.<br><br>BEST BUY STORES L.P., a Minnesota Corporation authorized to do business in the State of California,<br><br>       Defendants. | ) Case No. CV-11-07697 JAK (MRWx)<br>)<br>) **PLAINTIFFS' OPPOSITION TO**<br>) **DEFENDANT BEST BUY STORE**<br>) **L.P.'S MOTION FOR SUMMARY**<br>) **JUDGMENT OR IN THE**<br>) **ALTERNATIVE MOTION FOR**<br>) **PARTIAL SUMMARY JUDGMENT**<br>) **OF PLAINTIFFS' CLAIMS**<br>)<br>) Dated: April 16, 2012<br>) Time: 8:30 a.m.<br>) Courtroom: 760<br>) |

---

# TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.     THE ALLEGATIONS AND THREE THEORIES OF RECOVERY . . . . . . . . 8

        A. Plaintiffs Have Properly Plead A Cause of Action For Failure to    Pay
           Wages Owed . . . . . . . . . . . . . . . . . . . . .  . . . . . . . . . . . . . . . . . . . . . . 9

        B. Best Buy's "Holiday Pay Policy For Retail Employees" is a Vacation
           Policy that Violates Labor Code §227.3 . . . . . . . . . . . . . . . . . . . . . . . . 10

        C.   Plaintiffs Properly Plead Their Breach of Contract Claim . . . . . . . . . . . 14

V.      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**OPPOSITION TO DEFENDANT BEST BUY STORE L.P.'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT OF PLAINTIFFS' CLAIMS**

**TABLE OF AUTHORITIES**

*Cases:*

*California:*

*Accord Guz v. Bechtel National, Inc.*
   (2000) 24 Cal. 4th 317 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*Boothby v. Atlas Mechanical, Inc.*
   (1992) 6 Cal. App. 4th 1595 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Caminetti v. Pacific Mut. Life Ins. Co.*
   23 Cal. 2d 94. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Drzewiecki v. H & R Block, Inc.*
   24 Cal. App.3d 695 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Henry v. Amrol, Inc.*
   (1990) 222 Cal.App.3d Supp. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Jones v. Crown Life Ins. Co.*
   (1978) 86 Cal. App. 3d 630 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Marvin v. Marvin*
   (1976) 18 Cal.3d 660 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Olsen v. Breeze, Inc.*
   (1996) 48 Cal. App. 4th 608 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Paton v. Advanced Micro Devices, Inc.*
   (2011) 197 Cal. App. 4th 1505 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Pugh v. See's Candies*
   16 Cal. App. 3d 311, Cal. Court of Appeal, 1st App. Dist., 1st Div. 1981 . . .18

*Schumann v. California Cotton Credit Corp.*
   (1930) 105 Cal. App. 136 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Suastez v. Plastic Dress-Up Co.*
   31 Cal. 3d 774. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 9, 10, 12

ii

1

2 | *Thomka v. Financial Corp.*
3 |    (1993) 15 Cal. App. 4th 877 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 14

4 | *Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*
5 |    (1972) 24 Cal. App. 3d 35 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

6 | *Victoria v. Superior Court*
7 |    (1985) 40 Cal. 3d 734 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

8 | *Federal:*

9 | *Anderson v. Liberty Lobby, Inc.*
10 |    477 US 242 at 248-250 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11 | Duldulao v. St. Mary of Nazareth Hosp. Ctr.
12 |    505 N.E.2d 314, 318 (Ill. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

13 | *Ferguson v. Host International, Inc.*
14 |    757 N.E. 2d 267 (Mass. App. Ct. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

15 | *Gates v. Life of Mont. Ins. Co.*
16 |    668 P.2d 213, 214-16 *(Mont. 1983);* . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

17 | *Hoffman v-La Roche, Inc. v. Cambell*
18 |    (Ala. 1987) 512 So.2d 725 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

19 | *McDonald v. Mobil Coal Producing, Inc.*
20 |    820 P2d 986 (Wyo. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 17

21 | O'Brien v. New England Tel. & Tel. Co.
22 |    664 N.E.2d 843, 845 (Mass. 1996); . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18

23 | *Pettis v. Sundstrand Corp.*
24 |    1994 WL 283952 (9th cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

25 | *Savarese v. Pyrene Mfg. Co.*
26 |    89 A.2d 237, 240 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

27 | *Simpson v. W. Graphics Corp.*
28 |    643 P.2d 1276, 1278 *(Or. 1982)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

OPPOSITION TO DEFENDANT BEST BUY STORE L.P.'S MOTION FOR SUMMARY JUDGMENT OR IN
THE ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT OF PLAINTIFFS' CLAIMS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Strass v. Kaiser Foundation Health Plan of Mid Altantic*
    744 A2d 1000 (D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Thompson v. St. Regis Paper Co.*
    685 P.2d 1081, 1087 *(Wash. 1984).* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Toussaint v. Blue Cross and Blue Shield of Michigan*
    292 N.W.2d 579 (Mich. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 16

*Weiner v. McGraw-Hill, Inc.*
    443 N.E.2d 441, 443 *(N.Y. 1982);.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Woolley v. Hoffmann-La Roche, Inc.*
    491 A.2d 1257 (N.J. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Other Sources:*

California Department of Labor Standards and Enforcement . . . . . . . . . . . . . .*passum*

Cal. Labor Code §200 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

Cal. Labor Code §218 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cal. Labor Code §227.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*passum*

Fed. R. Civ. P. 56 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 7

**OPPOSITION TO DEFENDANT BEST BUY STORE L.P.'S MOTION FOR SUMMARY JUDGMENT OR IN**
**THE ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT OF PLAINTIFFS' CLAIMS**

## I.   INTRODUCTION

This case is brought against Best Buy Stores, L.P. ("Best Buy") by a class of exempt store managers and assistant managers in California who did not receive an alternative day off when they worked on one of six "company designated" holidays. Some of the Best Buy policies are set forth in an electronic manual called eGo available to the employees online. The portion of the manual which addresses holidays for exempt employees states: "If you are an exempt employee, you will receive your regular salary for the week in which a Company-designated holiday is observed". Bonura Dec., Ex. B, P.5. The language logically implies two things: that an employee who gets a day off for a holiday won't get his pay docked for that day; it also implies that Best Buy will actually observe the holidays it designates.

Plaintiff Karrer worked as a General Manager at Best Buy's Corona store between January of 2008 and May of 2011. He often was required to work on designated holidays but did not receive an alternative day off or an extra day's pay. Karrer Dec. ¶7. He learned that at other stores, exempt employees were scheduled an alternative day off when they had to work on a holiday. Karrer Dec. ¶7. He then obtained the Best Buy HR document entitled "Holiday Pay Policy for Retail Employees" which states in no uncertain terms that:

> "Exempt managers will receive one paid holiday, designated in advance of each of the following Company designated holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Christmas Day. The date of the holiday will be determined by (insert title of employee with scheduling duties) and scheduled within 30 days before or after the Company holiday. If the holiday is not used on the designated day, it will be lost. Unused holidays will not be paid out upon termination of employment." See Ex. D, Cotter Dec.[1]

---

[1] Exhibits attached to Declaration of Laura M. Cotter ("Dec. Cotter")

1

1        In this motion, Best Buy distances itself from the "Holiday Pay Policy for
2   Retail Employees" memo, calling it a "Scheduling Memo," and offering the
3   declaration of its Southern California Territorial HR Manager, David Bonura, which
4   swears that the Holiday Pay Policy memo was merely a discretionary "guideline"
5   which store managers were free to disregard in scheduling exempt employees.
6   Bonura Dec., ¶8. The Holiday Pay Policy for Retail Employees memo itself does not
7   say this. Ex. D to Dec. Cotter. Also, discovery concerning the memo (not presented
8   by Best Buy in the moving papers) indicates otherwise.

9        The Holiday Pay Policy document was created in the Human Resources
10  Department of Best Buy's national headquarters in Minnesota. (Dep. Bonura at
11  10:19, Ex. C to Dec. Cotter) and distributed to all Territorial Human Resources
12  Departments. Dec. Bonura, ¶8. (Best Buy is organized nationally into Territories ---
13  there are two in California --- and the Territories are in turn organized into Districts.
14  Bonura Dep. 8:7-9, Ex. C to Cotter Dec.) Bonura, as Territory manager, distributed
15  the holiday policy memo to all District Human Resources Managers in his Territory.
16  Dec. Bonura, ¶8. Bonura testified that the memo was to be used in the entire state of
17  California. Bonura Dep. 8:7-9, Ex. C to Cotter Dec. Other Best Buy correspondence
18  distributed with the Holiday Policy memo indicates that it was not a mere
19  discretionary "guideline." See Ex. F, Cotter Dec.:

20          "*YOU as a GM must be familiar with this POLICY and must insure your*
21          *Exempt managers are properly compensated for the 6 holidays called out*
            *below!!! If the exempt manager is off on holiday, then there is no need to*
22          *designate a different day off. If they work the holiday, then they are entitled to*
23          *a different day off with their 8 hours of holiday pay.*" See also Ex.'s E, G, H,
24          & I to Dec. Cotter.

25       Mr. Bonura admits in his declaration (¶8) that he distributed the memo to all
26  California Districts in his Territory. (Previously, he testified in his deposition to the
27  contrary ---that he did not distribute it to anyone but changed his story. Dep. Bonura
28  at 33:17-34:2; 39:21-40:9, Ex. C to Dec. Cotter.)

2

At a minimum, this motion is premature under Rule 56(d). The summary judgment procedure under Rule 56 is not a substitute for trial. When there are issues of material fact which bear on a plaintiff's claim, a Rule 56 motion must be denied.[2] This motion was filed while discovery on the Holiday Pay Policy memo is still ongoing. Plaintiffs previously served a Rule 30(b)(6) deposition notice concerning Best Buy's holiday pay policies, and Best Buy produced Mr. Bonura as the corporate designee. In response to questioning about the holiday policy document, he did not know who authored the document at Best Buy's national headquarters, how it was intended by its author, or the national HR department, to be used, what correspondence exists directing how it should be used, and how it actually is used in all California stores. Bonura Dep. 40:14-43:4, Dec. Cotter at Ex. C. Plaintiff has served a supplemental 30 (b) (6) notice to flush out all these facts, but this discovery has not been completed.

Best Buy also argues that Karrer wasn't aware of the Holiday Policy memo until near the end of his employment, and therefore it could not have become a term of his employment. This is distortive. He became aware that exempt employees in other stores were being provided with alternative days off when they worked on a designated holiday. Decl. Michael Karrer at ¶ 3. He then asked his District HR manager for the written statement of the holiday policy. The HR manager would not respond to him for reasons which are still unclear. Decl. Michael Karrer, Dep. Karrer, 95:2-96:13, 97:19-98:6, Ex. A to Dec. Cotter He then asked another employee to ask for the policy, and the other employee was able to obtain the document and provided it to Karrer. Dec, ¶¶5,6; See also Ex. I to Dec. Cotter.

---

[2] Rule 56 (d) provides that "when facts are unavailable to the nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

**Plaintiffs' Opposition to Defendant's Motion to Summary Judgment or In The Alternative for Partial Summary Judgment of Plaintiff s' claims**

1    Plaintiffs allege that the violation of Best Buy's Holiday Policy violates
2  California law. Plaintiffs present three separate and distinct theories of recovery:

3    1) causing employees to forfeit wages earned (a paid alternate day off for
4  having to work a holiday is an employee benefit and therefore a "wage" under the
5  Labor Code); 2) causing Best Buy's employees to forfeit vested vacation days, in
6  violation of Labor Code §227.3 ("floating" days off as a substitute for working on a
7  designated holiday are vacation under the Labor Code) and; 3) breaching its contract
8  with its employees by taking away the paid holiday promised in the Holiday Pay
9  Policy memo (employee policies form the contract between employer and
10  employees.)

11    First, Plaintiffs allege that these forfeitures constitute an unlawful forfeiting of
12  "wages". A wage does not have to be money and can be anything of value such as
13  stock or vacation. A wage, per the California Labor Code, "includes all amounts for
14  labor performed by employees of every description, whether the amount is fixed or
15  ascertained by the standard of time, task, piece, commission basis, or other method
16  of calculation." Cal. Labor Code §200 (a). Thus, as Best Buy's policy promises that
17  every time Plaintiffs and members of the putative Class work on a Best Buy-
18  recognized holiday, they "will receive one paid holiday", that day off with pay
19  without having to work is a "wage".

20    The second theory is that paid holidays are subject to Lab. Code Section 227.3
21  and *Suastez v. Plastic Dress-Up Company* (1982) 31 Cal. 3d 774 and cannot be
22  forfeited. As described more in detail below, whenever a paid day off is not tied to a
23  particular event occurring on that day off, the day off is deemed a vacation day, and
24  subject to Cal. Labor Code §227.3. This broad interpretation of what constitutes a
25  vacation day is important, lest an employer use clever drafting to avoid its
26  responsibilities under §227.3.  Best Buy argues that because these paid holidays are
27  tied to Best Buy-recognized holidays, they should not be considered non-forfeitable

28

4

vacation wages under §227.3.  However, the compensatory alternative holiday is not tied to the specific date of the holiday but can be scheduled on a day of the employee's choosing within the 60 day window.  As the California Department of Labor Standards and Enforcement (hereinafter "DLSE") opined when reviewing a policy almost exactly like the policy Best Buy now defends:

> If the DLSE were to allow employers to provide "discretionary" time off under the guise of "floating holidays" or "personal days" as holidays not subject to the *Suastez* principles, it would be an invitation for the unscrupulous employer to simply revise the company "vacation" plan to a "discretionary holiday" plan.  Thus, the employer could offer the same benefit as the employer with a vacation plan, but not be burdened by the provisions of Labor Code §227.3. DLSE Manual 15.1.2.

Plaintiffs' Request for Judicial Notice, Ex. 2, at Page 3.[3]

The third theory is the fourth count and is for breach of contract. The terms of Best Buy's employee "Holiday Pay Policy for Retail Employees," form a contract between Best Buy and its employees.  See *Thomka v. Financial Corp.* (1993) 15 Cal. App. 4th 877, 886-87. Under this contract, Plaintiffs were to receive an alternative day for working on a Best Buy-recognized holiday.  However, because the days could not scheduled within the 60 day time frame, or because the policy was not followed in many cases, Plaintiffs and other members of the putative Class often forfeited or lost these alternative days.  As such, Plaintiffs allege that their promised benefit, the alternative days, were forfeited, and the employment contract was breached.

---

[3] A point of clarification: the case does not involve issues as to *when* the benefit vests --- there is no issue of "progressive" vesting as in *Suastez*.  Here, the employees either work on the designated holiday, or are eligible for paid holidays, or they do not, and are not so eligible. There is no claim here that an employee on the payroll for one month is entitled to 1/12 of a day's pay for holidays which are to occur later in the year.  This case only involves claims for missed substitute holidays when the class members actually were still on the payroll at the time of each associated holiday and were thus fully vested in substitute holiday pay for that holiday.

1    Best Buy claims that not all employees received the memo and argues that (1)
2    the class members must have all been aware of the policy for there to be an
3    enforceable contract and (2) it has a disclaimer on its online human resources
4    website stating that nothing in the employee policy manual can be construed as a
5    contract. Defendant's memorandum at P. 4. Because Best Buy disseminated the
6    Policy to a portion of Class Members (evidence shows it went to all HR managers in
7    the state), Best Buy could expect that a reasonable employee in reading the Holiday
8    Pay Policy would expect that all employees are subject to the same rights and
9    benefits under the policy. Moreover, due to the nature of the relationship between
10   employers and employees, and the consideration rendered by virtue of the loyalty
11   and dedication employment policies promote, courts have held that statements by an
12   employer of its personnel policy and procedure can give rise to contractual rights in
13   employees without evidence that the parties have mutually and bilaterally agreed that
14   the policy statements create contractual rights in the employee. See *Toussaint v. Blue*
15   *Cross & Blue Shield of Michigan*, 292 N.W.2d 579 (Mich. 1980).

16       As explained below, disclaimers buried within employment policy manuals
17   have not been held to be a bar to enforcing employer-employee agreements because
18   the promulgation of company policies and procedures can give rise to reasonable
19   expectations in employees that the company intended to make legally binding
20   promises. See *McDonald v. Mobil Coal Producing, Inc.* 820 P.2d 986 (Wyo. 1991).

21       For all intents and purposes, this policy was to be *the* policy of the company. It
22   was disseminated by corporate headquarters to the all Territory managers and then
23   the Territory managers sent it to all District Human Resources Managers who in turn
24   disseminated it to some (if not all) general and assistant managers. These
25   communications state the policy unambiguously and clearly. There is no
26   discretionary language on the face of the policy. There is no evidence of a revision or
27   qualification of this policy in the manner characterized by Best Buy besides the three
28

6

1  self serving declarations offered in support of summary judgment.

2  **II.     LEGAL STANDARD**

3  Summary judgment is appropriate if there is "no genuine dispute as to any

4  material fact". Fed. R. Civ. P. 56 (a). The Court cannot decide disputed facts in a

5  summary judgment proceeding. Fed. R. Civ. P. 56 (a). If any facts material to a

6  claim are disputed, then summary judgment cannot be granted on that claim. Fed. R.

7  Civ. P. 56 (a). *Anderson v. Liberty Lobby, Inc.*, 477 US 242 at 248-250 (1986).

8  **III.    STATEMENT OF FACTS**

9  To avoid repetition, Plaintiff does not repeat all of the facts laid out for the

10  Court in Section I of this memorandum. Plaintiff Michael Karrer first received the

11  Holiday Policy For Retail Employees document in February 2011. Dec. Karrer, ¶6.

12  Karrer requested a written statement of Best Buy's holiday policy it first at the end of

13  2009 or beginning of 2010 because he knew other employees were receiving days off

14  for working on designated holidays. Dep. Karrer at 98:20-99:9; Dec. Karrer ¶3.

15  Karrer, having not received a response, asked another manager, Jeffrey King, at

16  another store to ask the District Human Resources Manager for a written statement

17  of the Holiday Policy. Dec. Karrer, ¶4. Mr. Mark Shurkin, a District Human

18  Resources (HR) Manager, sent the "Holiday Pay Policy for Retail Employees" to

19  Jeffrey King-another GM at Best Buy who worked in the San Bernardino store in the

20  same District 63 as Plaintiff Karrer. Ex. I to Dec. Cotter.

21  Mr. Shurkin (District HR Manager) sent the Holiday Policy to all Managers in

22  his District on May, 19, 2011 with the message "with the spring and summer

23  holidays approaching, I thought it best to send this out as a reminder to be planning

24  for time off needs." See Ex. E, Dec. Cotter. Again, there is no language qualifying

25  the Policy or indicating that it is discretionary in any way. Mr. Shurkin sent this

26  Policy to his District, including all managers, less than one month later on June 2,

27  2011 with the message:

28

Plaintiffs' Opposition to Defendant's Motion to Summary Judgment or In The Alternative for Partial Summary
Judgment of Plaintiff s' claims

"General Manager's: There are always questions that come up with regard to Holiday Pay, particularly in regards to exempt employees. This detailed version was just sent out on May 19[th]. This provides ABSOLUTE CLEARITY [sic] AND CONSISTENCY. It explains how SALARIED EMPLOYEES ARE AFFECTED. You are responsible to insure your managers are getting their time as called out below. Please clearly identify these days on your leadership schedules. (This includes YOU. YOU as a GM must be familiar with this POLICY and must insure your Exempt managers are properly compensated for the 6 holidays called out below!!! If the exempt manager is off on holiday, then there is no need to designate a different day off. If they work the holiday, then they are entitled to a different day off with their 8 hours of holiday pay." (*Emphasis in Original*): See Ex. F to Cotter Dec.

Best Buy offers Mr. Shurkin's declaration in support of Defendant's motion for summary judgment in which he states that he did not send this "Scheduling Memo" out after he received it and states he did not send it to Karrer personally *or to his store*. See Shurkin Dec. ¶5. The exhibits referenced above directly contradict his declaration and show that he sent it out to District 63 (Karrer worked in District 63) on multiple occasions in 2011. Mr. Jeffrey King, the General Manager who received the policy and sent it to Michael Karrer, works at store 150 in San Bernardino within District 63 as well which is not disputed by Best Buy.

Plaintiff Santiago Estrada testified to working most designated holidays (Dec. Cotter, Estrada Dep. 30:14-16, Ex. B) but was not compensated properly thereafter.

## IV. THE ALLEGATIONS AND THREE THEORIES OF RECOVERY

As stated in the introduction, Plaintiffs have three different and distinct theories of recovery. Despite arising from the same policy, and contrary to Best Buy's attempts to blend and confuse the different claims, these three theories are separate and distinct from one another, as they each relate to a separate primary right – the right to be paid wages, the right to be paid vested vacation time, and breach of contract. See *Olsen v. Breeze, Inc.* (1996) 48 Cal. App. 4th 608, 625.

8

**A.    Plaintiffs Have Properly Plead A Cause of Action For Failure to Pay Wages Owed**

Plaintiffs allege that these forfeitures constitute an unlawful withholding of "wages," in violation of the California Labor Code. The definition of "wages" under California law encompasses many forms of payment including all amounts for which labor is performed. See Lab. Code section 200 (a). Wages, per the California Labor Code, "includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." Cal. Labor Code §200 (a). Thus, as Best Buy's policy promises that every time Plaintiffs and members of the putative Class work on a Best Buy-recognized holiday, they "will receive" an alternative paid holiday, that is a day of wages without having to work. Best Buy, by refusing to pay these wages, and by causing its employees to forfeit this alternative form of wages allows employees to bring suit for these unpaid wages under Labor Code §218.

Moreover, California law does not specify that wages must be paid in cash, and can be paid in numerous alternative forms. *Schumann v. California Cotton Credit Corp.* (1930) 105 Cal. App. 136, 140 ["Wage is compensation for services rendered, and this compensation may take the form of money paid or other value given, such as board, lodging or clothes."] As the Court in *Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1972) 24 Cal. App. 3d 35, 44, noted, "In its legal sense, the word "wage" has been given a broad, general definition so as to include compensation for services rendered without regard to the manner in which such compensation is computed."

Under California's broad definition of wages, there can be no doubt that Best Buys's paid holiday is a wage. The California Supreme Court in *Suastez v. Plastic Dress-Up Company* (1982) 31 Cal. 3d 774 at 784 defined vacation days as "wages", and further held that they are not forfeitable. Best Buy's policy states that for working on a holiday, the employee is due to be compensated for a day's wages

9

1   without having to work. Best Buy's paid holidays are compensation to its salaried
2   employees who work on a Best Buy recognized holiday.

### B.   Best Buy's "Holiday Pay Policy For Retail Employees" is a Vacation Policy that Violates Labor Code §227.3

Plaintiffs' Third Cause of Action presents their second theory of recovery. Here, Plaintiffs allege that not only are paid holidays wages, but they are also a special type of wage called vacation pay. Although Best Buy's policy does not explicitly state that the paid holidays earned by working a holiday are vacations, the California Department of Labor Standards and Enforcement (hereinafter, "DLSE") states that any leave policy that allows an employee to take a day off that is a substitute for a holiday, and that day is not tied to the day of the holiday but can be taken on a different day of the employee's choosing, is deemed a vacation. DLSE manual Section 15.1.2.

Further, Labor Code §227.3 states, in part, that "an employment contract or employment policy shall not provide for forfeiture of vested vacation time." Further, the California Supreme Court in *Suastez v. Plastic Dress-Up Company* (1982) 31 Cal. 3d 774, 784, defined vacation days as wages, and further held that they are not forfeitable under Lab. Code §227.3. Thus, Plaintiffs allege that Best Buy's policy whereby Plaintiffs and other members of the putative class are supposed to receive alternative paid days off for working on company designated holidays, but then forfeit them, is a violation of Cal. Labor Code §227.3.

Plaintiffs allege not only that Best Buy's Holiday Policy is a form of vacation, but also allege that Best Buy's holiday policy is a "use it or lose it" vacation policy under §227.3. Specifically, §227.3 states:

> Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided,

10

however, that <u>an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination</u>. The Labor Commissioner or a designated representative, in the resolution of any dispute with regard to vested vacation time, shall apply the principles of equity and fairness. (*Emphasis added.*)

As stated by the Supreme Court in *Suastez v. Plastic Dress-Up Company* (1982) 31 Cal. 3d 774, the §227.3 redefined vacation pay as a form of deferred compensation.  Per the Supreme Court:

> It is established that vacation pay is not a gratuity or a gift, but is, in effect, additional wages for services performed. (*People* v. *Bishopp* (1976) 56 Cal. App. 3d Supp. 8, 11 [128 Cal. Rptr. 923]; see generally Giacomini, Advising Cal. Employers (Cont. Ed. Bar 1981) § 1.25, p. 23; 51 C.J.S., Labor Relations, § 243, p. 1078.) In an early, oft-cited case determining employees' rights to vacation pay under a collective bargaining agreement, Judge Augustus Hand wrote, "A vacation with pay is in effect additional wages. It involves a reasonable arrangement to secure the well being of employees and the continuance of harmonious relations between employer and employee." ( *In re Wil-Low Cafeterias* (2d Cir. 1940) 111 F.2d 429, 432.) The consideration for an annual vacation is the employee's year-long labor. Only the time of receiving these "wages" is postponed. (*Ibid.*) Id. at 779.

Thus, while a vacation policy may be crafted in many ways, Labor Code §227.3 requires that vested and unused vacation days cannot be forfeited.  See *Boothby v. Atlas Mechanical, Inc.* (1992) 6 Cal. App. 4th 1595, 1604-1605; *Henry* v. *Amrol, Inc.* (1990) 222 Cal.App.3d Supp. 1.

Best Buy argues that this policy is a discretionary "holiday" policy, not a vacation policy, and therefore, is not subject to §227.3.  However, the Holiday Pay Policy states that managers are entitled to be compensated with an additional paid holiday should they have to work on one of the company designated holidays. Thus, as with any other vacation policy, the holidays in question (for working on a holiday) are meant to be a form of compensation, not a discretionary bonus.

Best Buy cites to *Paton v. Advanced Micro Devices, Inc.* (2011) 197 Cal. App. 4th 1505, for the proposition that holidays are not counted as vacation days. *Paton* is

1  about whether or not a former employee can be compensated for an untaken

2  sabbatical, not holidays or vacations.  Even then, *Paton* simply restates the position

3  of the DLSE, in stating, again in dicta, that holidays, like sick leave and

4  bereavement, are tied to specific events.  Id. at 1519. *Paton* does not address

5  substitute or "floating" holidays.

6       Here, the paid holidays are not tied to a specific event, i.e., the day of the

7  designated company holiday, but the paid holiday owed for working on the

8  designated holiday can be taken on a day of the employee's choosing within the 60

9  day window.

10      DLSE opinions are particularly instructive on delineating an earned vacation

11 from a discretionary holiday. Per the DLSE Enforcement Manual:

12
13       DLSE has been asked on numerous occasions to give an opinion
         regarding the difference between vacation wages and other leave
14       benefits. The DLSE has always opined that leave <u>time which is</u>
         <u>provided without condition</u> is presumed to be vacation no matter what
15       name is given to the leave by the employer. Such an enforcement policy
         insures that leave policies which are nothing more than vacation policies
16       under a different name are not instituted as subterfuges to defeat the
         provisions of Labor Code § 227.3 and the conclusions of the California
17       Supreme Court in *Suastez*.
         DLSE Enforcement Manual, §15.1.2, Ex. 2 to Plaintiffs' Request for
18       Judicial Notice.
19

20      Best Buy argues that the term "without condition" language of the

21 enforcement manual means that placing conditions on when the employee can take

22 the day off – such as business needs and the 60 day window within which it can be

23 scheduled– that the days off offered for working on designated holidays are not

24 vacation days.

25      Consistently, the DLSE has opined when a day off "floats," that is, it is not

26 tied to a specific event occurring on the specific day the employee takes off, that day

27 off is deemed a vacation day under §227.3. The April 27, 1992 Letter, found at Ex.

28 1, though, is directly on point.  The employees in question were given days off for

12

1   their birthdays and anniversaries as "floating holidays," where they could take time

2   off not just on their birthdays and anniversaries but on any day of their choosing

3   within a certain timeframe. The employer sought to clarify if these days off were

4   vacations.  The DLSE opined:

> If your client's policy, which requires that the employee is eligible for a
> vacation day with pay upon the happening of a specific event (i.e.
> anniversary or birthday), were to be enforced so as to limit the
> "holiday" to the date of the happening of the event, the additional
> holidays would not be considered vacation. **If, on the other hand,
> need not be taken on the day of the event (or pursuant to the policy
> if the 'event falls on a Saturday, Sunday, or during paid time off'),
> then the "holidays" are "personal" holidays and are subject to the
> *Suastez* principles.**

12          Plaintiffs' Request for Judicial Notice, Ex. 1 at p. 3. (*Emphasis added.*)

13   In other words, because the holiday in question "floated," and was not tied to the

14   actual additional holiday itself or to any specific event, the DLSE opined that those

15   "floating holidays" are vacation days under Lab. Code§227.3. Best Buy's policy is

16   virtually identical to the policy the DLSE in the April 27, 1992 letter found to be a

17   vacation policy. Again, Best Buy's policy is that if an employee works on a holiday,

18   the employee is supposed to receive a paid holiday, an alternate day off which

19   "floats" within the 60 day window, but if unused is forfeited upon termination.

20          Lastly, Best Buy argues that only former employees may seek redress for

21   forfeitures under §227.3.  This argument is nonsensical, as it would require

22   employees who are subject to a forfeiture provision in violation of §227.3 to wait

23   until the end of their employment, which could be tens of years in the future, to

24   challenge their employer's unlawful practices.  Certainly, the employees in question

25   would be able to seek *injunctive relief* to stop the employer's practices.  Even if Best

26   Buy's view of the law is correct, Michael Karrer, who is on disability leave from the

27   company, has a right to seek redress in the form of injunctive relief to prevent

28   forfeiture upon termination. Lab. Code Section 227.3 provides two distinct things: 1)

13

no forfeiture of vacation pay and 2) payment for unused vacation is due immediately when an employee leaves. Best Buy improperly blends both rules together and concludes illogically that improperly forfeited vacation is only to be paid at the end of vacation.

### C.    Plaintiffs Properly Plead Their Breach of Contract Claim

As noted above, Plaintiffs' fourth cause of action, and third theory of recovery, is for breach of contract.  Plaintiffs allege that Best Buy's employment Holiday Policy form part of the contract between employer and employees, and that Best Buy's failure to provide the compensatory days for working on Best Buy-recognized holidays as promised in that contract is a breach.  Indeed, the "Holiday Policy for Retail Employees" at issue here is definitely part of the employment contract between Best Buy and its employees.  Per the Court of Appeal in *Thomka v. Financial Corp.* (1993) 15 Cal. App. 4th 877, 884-85:

> In the employment context, factors apart from consideration and express terms may be used to ascertain the existence and content of an employment agreement, including **the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged.**

*Accord Guz v. Bechtel National, Inc.* (2000) 24 Cal. 4th 317, 339.

As such, and breach of the terms of the Holiday Policy memo would be considered a common law breach of contract.   Similarly, the DLSE, in the April 27, 1992 Opinion Letter, found at Ex. 3 to Plaintiffs' Request for Judicial Notice, also states that violations of employment policies providing for floating holidays  constitute breaches of contract under common law principles as well as violating the Labor Code. Per the DLSE:

> It is true, that the policy states that "To be eligible for holiday pay, nonexempt employees must work the last scheduled day immediately

14

> preceding the holiday and the first scheduled day immediately following it," but you ask us to assume that such is the case; that is that the employee "has worked the day before and the day after his or her anniversary and/or birthday". It seems quite clear that based upon common law contract principles the employee has met the condition precedent as to "holiday" pay and would be entitled to recover the "pay" for the unused "floating holiday" absent language in the contract (i.e., the policy) which would clearly indicate that the "holiday pay" was to be forfeited under these circumstances

Plaintiffs' Request for Judicial Notice, Ex. 3, p. 2.

Again, Best Buy's policy states that "Exempt Managers will receive one paid holiday, designated in advance of each of the following Company designated holidays…"

Best Buy argues, in the face of the policy document at issue and without evidence in the internal documents, that this policy document was a) discretionary and not a real policy at all and b) that the class members and plaintiffs had to all have known about the policy in order to claim a breach of contract. Firstly, Plaintiff Karrer did observe the policy by witnessing other managers in other stores receiving alternate days off for working designated holidays, and he asked for it and ultimately received the policy in February of 2011—albeit from another manager, Jeffrey King. Secondly, the evidence shows that his HR manager sent it to everyone in his district (District 63) with the message that this is "the policy". Ex.'s E to I, Cotter Dec. Best Buy argues now that it only disseminated the policy to all District Human Resources Managers and it was then disseminated as Human Resources Managers saw fit. Bonura Dec., ¶8. However, there is no evidence of anyone instructing Distrcit Human Resources Managers that the policy is not in fact a policy or that it is discretionary and no documents have been produced thus far in discovery to this effect.

The Court should not read the holiday policy as Best Buy does. As with any contract, any ambiguity in the contract (which Plaintiffs believe is not present here),

15

1   should be read in the light most favorable to the Plaintiffs. *Victoria v. Superior Court*
2   (1985) 40 Cal. 3d 734, 743; *Jones v. Crown Life Ins. Co.,* (1978) 86 Cal. App. 3d
3   630, 639.  Moreover, had Best Buy wanted to make the paid holidays at issue
4   discretionary, it could have simply said so. Given the language of the Holiday Policy
5   document, there is only one correct reading – that Best Buy employees who work on
6   Best Buy-recognized holidays are supposed to receive a paid holiday, and that Best
7   Buy has breached its agreement with Plaintiffs by not providing that paid holiday.

8        Courts have been particularly open to the theory that employee handbooks
9   may constitute an implied employment contract even where no express agreement
10  between employer and employee existed. Courts have recognized certain contractual
11  rights within the employment relationship that may arise from oral statements made
12  by management, employment offer letters and replies, employment application
13  forms, performance appraisals, compensation and benefit statements, employers'
14  practices and policies, and employee handbooks and personnel manuals. One of the
15  first cases to recognize that an employee handbook could create an implied contract
16  was *Woolley v. Hoffmann-La Roche, Inc.* 491 A.2d 1257 (N.J. 1985).

17       In *Woolley*, the plaintiff was hired without a written employment contract, but
18  received a personnel manual one month after being hired. He was fired and sued his
19  former employer, claiming that the termination clauses of the personnel manual
20  requiring certain procedures before termination were contractually enforceable.  The
21  New Jersey Supreme Court agreed, holding that: "when an employer of a substantial
22  number of employees circulates a manual that, when fairly read, provides that certain
23  benefits are an incident of the employment (including, especially, job security
24  provisions), the judiciary, instead of "grudgingly' conceding the enforceability of
25  these provisions ... should construe them in accordance with the reasonable
26  expectation of the employees." Id. at 1264 (citing *Savarese v. Pyrene Mfg. Co.*, 89
27  A.2d 237, 240 (1952).

28

16

1    The *Woolley* opinion was presaged by *Toussaint v. Blue Cross and Blue Shield*
2    *of Michigan*, 292 N.W.2d 579 (Mich. 1980) in which the Michigan Supreme Court
3    held that when an employer chooses to create an environment where the employee
4    believes that the employment policies and practices are established, fair and
5    uniformly applied to each employee, then the employer has created "a situation
6    instinct with an obligation." Id. at 892. The reasonable expectation test developed by
7    *Toussaint* and *Woolley* has been used by many courts since these decisions and
8    "virtually all jurisdictions that have considered the question have concluded that
9    unilaterally promulgated personnel manuals and employee handbooks can give rise
10   to enforceable promises of job security." See *Duldulao v. St. Mary of Nazareth Hosp.*
11   *Ctr.*, 505 N.E.2d 314, 318 (Ill. 1987); O'Brien v. New England Tel. & Tel. Co., 664
12   N.E.2d 843, 845 (Mass. 1996); *Gates v. Life of Mont. Ins. Co.*, 668 P.2d 213, 214-16
13   *(Mont. 1983); Weiner v. McGraw-Hill, Inc.,* 443 N.E.2d 441, 443 *(N.Y.*
14   *1982); Simpson v. W. Graphics Corp.,* 643 P.2d 1276, 1278 *(Or. 1982); Thompson v.*
15   *St. Regis Paper Co.,* 685 P.2d 1081, 1087 *(Wash. 1984).* Here, the promise was a
16   paid holiday and not job security but the premise remains the same.
17   Lastly, Best Buy argues on Page 4 of its memorandum that it has a disclaimer
18   on the eGO intranet website which states that the "company polices are not a
19   contract". However, the courts have held that these disclaimers cannot be enforced
20   because the promulgation of company policies and procedures can give rise to
21   reasonable expectations in employees that the company intended to make legally
22   binding promises. See *McDonald v. Mobil Coal Producing, Inc.* 820 P2d 986 (Wyo.
23   1991) where the Wyoming Supreme Court held that summary judgment was
24   improper because, despite the existence of a disclaimer similar to Best Buy's,
25   reasonable expectations of the employee were shaped by the employment handbook.
26   The Court also considered that the employee was "untutored" in contract law and
27   defined reasonableness in terms of the differences in bargaining power. Id at 989-
28   991. It is unclear from the evidence submitted by Best Buy whether its disclaimer is

17

1   revealed to employees at the time of hire, or at any time, or whether it is simply
2   buried in a voluminous manual at the online source.

3       *Ferguson v. Host International, Inc.* 757 N.E. 2d 267 (Mass. App. Ct. 2001)
4   is another decision where summary judgment on a disclaimer was held to be
5   improper because of the benefits the employer secures through the distribution of
6   personnel policies: "such a practice encourages employee security, satisfaction,
7   loyalty and the sense that every employee will be treated equally and fairly." Id at
8   272, quoting *O'Brien v. New England Tel. & Tel Co.*, 664 N.E. 2d 843, 843 (Mass.
9   1996).

10      The *Ferguson* Court went on to note that,
11      "courts recently have been reluctant to permit management to reap the benefits
        of a personnel manual and at the same time avoid promises freely made in the
12      manual that employees reasonably believed were part of the arrangement with
        the employer." Id. quoting *O'Brien v. New England Tel. & Tel Co.*, 664 N.E.
13      2d 843, 843 (Mass. 1996).

14      Plaintiffs also note the decision of *Strass v. Kaiser Foundation Health Plan of*
15  *Mid Altantic* 744 A.2d 1000 (D.C. 2000) where the Court of Appeals found that the
16  employer gains the loyalty of employees by promulgating rules that were to be
17  applied consistently and thus having gained advantage could not then disclaim intent
18  to be bound by the polices. Id. at 1012-1014.  Here, there is sufficient evidence of a
19  holiday policy which manager employees could reasonably expect to apply
20  uniformly and fairly to all of them. There is also evidence that this policy was
21  disseminated to at least part of the class meaning that once it had been
22  communicated as a uniform and non-discretionary policy, class members could fairly
23  have reasonable expectations that the policy would apply uniformly to each and
24  every one of them.

25      The Best Buy "Holiday Pay Policy for Retail Employees" provides simply that
26  a paid holiday is owed when a designated holiday is worked. By not providing this
27  paid holiday to employees who worked on the designated holidays, the contract
28

18

1   created by the "Holiday Pay Policy for Retail Employees" was breached and class
2   members can properly maintain a claim for breach of contract. (See *Hoffman v-La*
3   *Roche, Inc. v. Cambell* (Ala. 1987) 512 So.2d 725, 729-733 (implied promise to
4   abide by employee manual guidelines contractually enforceable); See also *Duldaulao*
5   *v. Saint Mary of Nazareth Hosp.* (1987) 115 Ill.2d 482, (listing 25 jurisdictions
6   recognizing contractually binding force of employee handbooks). While oblique
7   language will not, standing alone, be sufficient to establish agreement
8   (*Drzewiecki* v. *H & R Block, Inc., supra,* 24 Cal. App.3d 695, 703), it is appropriate
9   to consider the totality of the parties' relationship: agreement may be "'shown by the
10  acts and conduct of the parties, interpreted in the light of the subject matter and of
11  the surrounding circumstances.'" *Pugh v. See's Candies*, 16 Cal. App. 3d 311, Cal.
12  Court of Appeal, 1st Appellate Dist., 1st Div. 1981, quoting *Marvin* v.*Marvin* (1976)
13  18 Cal.3d 660, 678, fn. 16 [134 Cal. Rptr. 815, 557 P.2d 106])

14      Defendants rely heavily on one page unpublished Ninth Circuit decision,
15  *Pettis v. Sundstrand Corp.* 1994 U.S. App. LEXIS 19639 (1994). *Pettis* is a wrongful
16  termination case. Unpublished decisions should not be cited but, regardless, the facts
17  of *Pettis* were such that the employer had grounds for termination anyway regardless
18  of the terms of the policy which specified termination procedures which may not
19  have been followed. The Court noted that the plaintiff was unaware of the
20  termination procedures and could not have relied on them. Here, plaintiff knew the
21  holiday scheduling rules were being applied in other stores and asked for a written
22  statement of the Holiday Policy which formally stated them.

23      Lastly, Michael Karrer can bring an immediate action for breach of contract
24  despite being officially still employed by Best Buy. California recognizes an action
25  for anticipatory breach (Civ. Code, § 1440; *Caminetti v. Pacific Mut. Life Ins.* Co.,23
26  Cal. 2d 94, 105 [142 P.2d 741]), and that a definite and unconditional repudiation of
27  the contract by the promisor communicated to the promisee, being a breach of the
28  contract, creates an immediate right of action even though it takes place long before

19

1   the time prescribed for the promised performance and before conditions specified in

2   the contract have ever occurred. (*Remy v. Olds*, 88 Cal. 537 [26 P. 355]; see also 4

3   Corbin, Contracts, § 959, p. 852.

4   **V.    CONCLUSION**

5        For the foregoing reasons, Best Buy's Motion for Summary or Partial

6   Summary Judgment should be denied.

7

8   Dated: March 26, 2012            **CLARK & MARKHAM LLP**

9

10                                   By: /s/ David R. Markham

11                                        David R. Markham
                                          R. Craig Clark

12                                        James M. Treglio
                                          Laura M. Cotter

13                                   Attorneys for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' Opposition to Defendant's Motion to Summary Judgment or In The Alternative for Partial Summary
Judgment of Plaintiff s' claims

**DECLARATION OF SERVICE**
*Michael Karrer et al v. Best Buy Co Inc.,*
US District Court, Central District, Case No. 2:11-cv-07697-JAK -MRW

I am employed in the county of San Diego, State of California. I am over the age of 18 and not a party to this action. My business address is 600 B Street, Suite 2130, San Diego, CA 92101. On March 26, 2012, I served the document(s) described as:

| | |
|---|---|
| (1) | **PLAINTIFFS' OPPOSITION TO DEFENDANT BEST BUY STORES L.P.'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT OF PLAINITFFS' CLAIMS;** |
| (2) | **PLAINTIFFS' STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT PURSUANT TO LOCAL CIVIL RULE 56-2;** |
| (3) | **DECLARATION OF LAURA M COTTER ISO OPPOSTION TO MOTION FOR SUMMARY JUDGMENT;** |
| (4) | **DECLARATION OF PLAINTIFF MICHAEL KARRER;** |
| (5) | **PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;** |

on the following interested parties and in the manner as follows:

MORGAN, LEWIS & BOCKIUS LLP
BARBARA J. MILLER, ESQ.
MARIA O. GUTIERREZ, ESQ.
S. SEAN KUNDU, ESQ.
5 Park Plaza, Suite 1750
Irvine, CA 92614
Telephone: 949-399-7000
Facsimile: 949-399-7001

☐ **BY U.S. MAIL:** by placing the document(s) listed above in a sealed envelope for collection and mailing following our ordinary business practices. I am readily familiar with our ordinary business practices for collecting and processing mail for the United States Postal Service, and mail that I place for collection and processing is regularly deposited with the United States Postal Service that same day with postage prepaid.

☐ **BY OVERNIGHT DELIVERY** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed **above**. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☒ **BY ELECTRONIC ACCESS:** pursuant to Electronic Filing General Order 08-02 and Local Rule 5-4, I hereby certify that the above documents were uploaded to the ECF website and will be posted on the

1

1   Website by the close of the next business day and the webmaster will
    give e-mail notification to all parties.

2

3       I declare under penalty of perjury under the laws of the United States of
    America that the foregoing is true and correct and that this Declaration was executed
    on March 26, 2012, at San Diego, California.

4

5                                                        Elizabeth Weidetz

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        2
                            DECLARATION OF SERVICE