**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 11-07697 JAK (MRWx) | Date | May 24, 2012 |
|---|---|---|---|
| Title | Michael Karrer, et al. v. Best Buy Co., Inc. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Andrea Keifer | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 27)  JS-6**

**I.    Introduction**

Plaintiffs Michael Karrer and Santiago Estrada bring this putative class action on behalf of store managers -- including general managers and assistant managers -- at Defendant Best Buy Stores in California who claim they were denied compensation for certain holidays on which they worked. Second Amended Complaint ("SAC") ¶¶ 4-6, Dkt. 23. As managers, plaintiffs were salaried employees. Plaintiffs have not yet moved for class certification, but Best Buy moved for summary judgment. Dkt. 27. Plaintiffs sought additional time to conduct discovery pursuant to Federal Rule of Civil Procedure 56(d). Dkt. 46, 49. The Court heard oral argument on Best Buy's motion on May 21, 2012, and took the matter under submission. Dkt. 52. For the reasons set forth in this Order, the Court GRANTS the motion for summary judgment.

**II.   Background**

Best Buy stores are organized into Territories and, within those, Districts. Each District has a District Human Resources Manager ("DHRM"). Each store has a general manager and three or more assistant managers. The managers are exempt employees.

Plaintiff Michael Karrer worked as a manager with Best Buy from approximately January 2008 through May 2011, when he went on medical leave. He began as a manager in a Corona, California store in District 63, and was promoted to general manager of that store in June 2009. He was demoted to assistant manager in May 2011, and that month, took his medical leave, due to "severe depression" and "high anxieties." Karrer Depo., p.18:6-7, Kundu Decl., Exh. A, Dkt. 27-2. Plaintiff Santiago Estrada worked as a manager with Best Buy from approximately February 2008 through his termination in May 2011. He began as a product process manager in Best Buy's Victorville, California store in District 63, which store was realigned to District 24 in 2009; in February 2010 he moved to the West Covina, California store, also in District 24.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 11-07697 JAK (MRWx) | Date | May 24, 2012 |
|---|---|---|---|
| Title | Michael Karrer, et al. v. Best Buy Co., Inc. | | |

According to Best Buy's intranet website eGo, which contained at least some of Best Buy's official employment policies, for the time encompassing Plaintiffs' employment, Best Buy had a holiday pay policy that created six "Company-designated holidays": New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, and Christmas Day. Bonura Decl., Exh. B, Dkt. 27-5. Best Buy stores were closed on Thanksgiving Day and Christmas Day, and thus the managers did not work. *Id.* Exempt employees would receive their regular weekly salary for a week in which a Company-designated holiday was observed. *Id.*; *see* Estrada Depo., p.49, Kundu Decl., Exh. B., Dkt. 27-2 (acknowledging full payment of regular salary during pay periods in which a Company-designated holiday occurred); Karrer Depo., p.91, Kundu Decl., Exh. A, Dkt. 27-2 (same).

At some point in 2006, a memorandum entitled "Holiday Pay Policy for Retail Employees" was drafted and circulated among certain Best Buy DHRMs. Shurkin Decl. ¶ 4, Dkt. 27-4; Valencia Decl. ¶ 3, Dkt. 27-3; Bonura Decl., Exh. D, Dkt. 27-5. This "Holiday Pay Policy" memorandum listed the six "Company designated holidays." It then stated that "Exempt managers will receive one paid holiday, designated in advance of each of the" Company-designated holidays. *Id.* "The date of the holiday will be . . . scheduled within 30 days before or after the Company holiday. If the holiday is not used on the designated day, it will be lost. Unused holidays will not be paid out upon termination of employment." *Id.*[1]

Best Buy has presented evidence, which Plaintiffs have not disputed, that it was left to the discretion of the DHRM within each District whether to implement the Holiday Pay Policy memorandum in his or her District, *i.e.*, whether to adopt the policy of granting shifting holidays to salaried, exempt personnel such as Plaintiffs who worked in that District. Bonura Decl. ¶ 8, Dkt. 27-5. Grace Valencia, the DHRM in District 24 where Estrada worked, testified that the Holiday Pay Policy memorandum was never distributed to, or implemented for, stores in her district. Valencia Decl. ¶ 4, Dkt. 27-3. Mark Shurkin, the DHRM in District 63 where Karrer worked, has testified as to the same facts in his District. Shurkin Decl. ¶ 5, Dkt. 27-4.

Best Buy characterizes the "Holiday Pay Policy" as a scheduling tool, and not as a declaration of official Best Buy policy. It argues that the memorandum "was intended as a tool that stores could use to schedule managers who worked on one or more of the four designated holidays that the stores were open," Mot., p.1:24-26, Dkt. 27-1, *i.e.*, it allowed a manager who worked on a Company designated holiday to schedule an additional day off within 30 days of the holiday. Plaintiffs argue that the "Holiday Pay Policy" was an official Best Buy policy that guaranteed exempt employees certain additional vacation days whenever they worked on a Company designated holiday. SAC ¶¶ 14-17, Dkt. 23.

At some point in "[l]ate 2009, early 2010," Karrer requested in writing that Shurkin inform him about Best Buy's vacation or holiday pay policy. Karrer asserts that he posed this question because he had heard that managers in other districts were receiving additional days off when they worked on a Company designated holiday. Karrer Depo., pp.98-99, Cotter Depo., Exh. A., Dkt. 36-3. Shurkin did not respond to Karrer's request. Karrer Decl. ¶¶ 3-5, Dkt. 36-4. Karrer did not receive the Holiday Pay

---

[1] Given that the legal status of the holidays is in dispute, and that Plaintiffs' term "floating holidays" is a term of art under California labor law, the Court will refer to the holidays as "shifting holidays."

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 11-07697 JAK (MRWx) | Date | May 24, 2012 |
|---|---|---|---|
| Title | Michael Karrer, et al. v. Best Buy Co., Inc. | | |

Policy memorandum from Shurkin. Instead, in February 2011, Karrer obtained a copy of the Holiday Pay Policy memorandum from Jeffrey King, one of Karrer's co-workers. King allegedly received this copy from Shurkin. *Id.* at ¶ 6; Cotter Decl., Exh. I, Dkt. 36-3. In May 2011, Shurkin emailed the Holiday Pay Policy memorandum to District 63 general managers and staff. Cotter Decl., Exh. E, Dkt. 36-3. In June 2011, Shurkin again emailed the memorandum to District 63 managers and staff, stating that the memorandum was a "POLICY" and that general managers were responsible for ensuring that exempt managers were "properly compensated for the 6 Holidays called out below!" *Id.* at Exh. F. The email also indicated that "[i]f the exempt manager is off on the holiday, then there is no need to designate a different day off," but "[i]f they work the Holiday, then they are entitled to a different day off with their 8 hours of Holiday pay." *Id.*

  Estrada learned of the Holiday Pay Policy memorandum only from Karrer, and only following Karrer's termination. Estrada Depo., pp.14-15, pp.21-22, Kundu Decl., Exh. B., Dkt. 27-2.

  Karrer testified that he never worked on Thanksgiving or Christmas, because Best Buy stores were always closed on both days. Karrer Depo., p.31, Kundu Decl, Exh. A, Dkt. 27-2. He testified that he was "99.9 percent for sure," but not "100 percent for sure," that he worked Labor Day 2010. *Id.* at p.54. However, he testified that he could not recall working any of the remaining Company designated holidays during his term as an exempt manager. He nonetheless stated in his declaration that he "frequently worked on holidays without receiving another scheduled, paid day off." Karrer Decl. ¶ 7, Dkt. 36-4.

  When asked which, if any, Company designated holidays he worked, Estrada testified that

> I can't tell you if I worked them or not. I don't remember. If -- it was very difficult to get days off on the holidays. If you asked for them, if you got them off, you were lucky; but I never asked for them off, so I probably did work.

Estrada Depo., p.32:11-15, Kundu Decl., Exh. B., Dkt. 27-2. Estrada also testified that "I worked most holidays." Estrada Depo., p.30:14-15, Cotter Decl., Exh. B, Dkt. 36-3.

  Karrer further testified that he did not "know of any store that followed the policy" of the Holiday Pay Policy memorandum. Karrer Depo., p.103:10-11, Kundu Decl, Exh. A, Dkt. 27-2. However, Karrer stated in his declaration that, when he spoke with Shurkin in December 2009 or January 2010, Karrer "knew other managers were getting additional days off when they worked holidays." Karrer Decl. ¶¶ 2-3, Dkt. 36-4.

**III.**  **<u>Analysis</u>**

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 11-07697 JAK (MRWx) | Date | May 24, 2012 |
|---|---|---|---|
| Title | Michael Karrer, et al. v. Best Buy Co., Inc. | | |

### A. Plaintiffs' Theories of Recovery

#### 1. Plaintiffs' Contract Theory

Plaintiffs argue that the Holiday Pay Policy memorandum constituted a contract between Best Buy and Plaintiffs, and that Best Buy breached this contract by not allowing Plaintiffs to take any shifting holidays within 30 days of Company-designated holidays each worked.

##### a) Legal Standard

For a contract to exist between two parties, each must have assented to the contract. *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 270-71 (2001). Assent requires knowledge of the offer. *Am. Building Maint. Co. v. Indem. Ins. Co. of N. Am.*, 214 Cal. 608, 615 (1932). Nonetheless, a company policy, such as that evidenced in a handbook or employer policy memorandum, may give rise to a contract between employer and employee, even absent formal offer and acceptance. However, there must be "a mutual understanding that the rules or procedures" alleged to form the contract "would apply to the employee." *Hillsman v. Sutter Cmty. Hosps.*, 153 Cal. App. 3d 743, 753 (1984). In determining whether a company policy or employment agreement creates a contract,

> courts seek to enforce the actual understanding of the parties to an employment agreement. Where there is no express agreement, the issue is whether other evidence of the parties' conduct has a tendency in reason to demonstrate the existence of an actual mutual understanding on particular terms and conditions of employment.

*Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 337 (2000).

An employer's conduct may also give rise to an implied-in-fact contract: "The contractual understanding need not be express, but may be implied in fact, arising from the parties' conduct evidencing their actual mutual intent to create such enforceable limitations." *Id.* at 336. In determining, for example, whether an implied-in-fact contract has been formed guaranteeing that an employee will be terminated only for cause, the California Supreme Court has "identified several factors, apart from express terms, that may bear upon the existence and content of an implied-in-fact agreement," including "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." *Id.* at 336-37.

To demonstrate that such a contract has been formed, it must be shown that the employee was aware of an employer's policy, and relied on it. Thus, "[w]hen an employer promulgates formal personnel policies and procedures in handbooks, manuals, and memoranda *disseminated to employees*, a strong inference may arise that the employer *intended workers to rely* on these policies as terms and conditions of their employment, and that employees *did reasonably so rely*." *Guz*, 24 Cal. 4th at 344 (italics added). Furthermore, damages are an essential element of a claim for breach of contract. *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 11-07697 JAK (MRWx) | Date | May 24, 2012 |
|---|---|---|---|
| Title | Michael Karrer, et al. v. Best Buy Co., Inc. | | |

        b)      Application

      Neither Plaintiff can establish that he was denied shifting holidays in violation of a contract with Best Buy. To the extent that Plaintiffs contend that the Holiday Pay Policy memorandum constituted an express contract between the parties, neither Plaintiff was aware of the memorandum during a time when they could have taken a shifting holiday. Thus, any failure to provide shifting holidays could not constitute breach of contract. Plaintiff Estrada was terminated from Best Buy in May 2011. However, Estrada never learned of the Holiday Pay Policy memorandum during his employment. Estrada Depo., pp.14-15, pp.21-22, Kundu Decl., Exh. B., Dkt. 27-2. Consequently, there could never have been any mutual understanding between Best Buy and Estrada that he was to receive a shifting holiday pursuant to the Holiday Pay Policy memorandum. Plaintiff Karrer first saw the Holiday Pay Policy memorandum in February 2011. Karrer Depo., pp.39, 102, Kundu Decl., Exh. A, Dkt. 27-2. Thus, the memorandum might have constituted a contract between Best Buy and Karrer as of that time. However, because Karrer went on leave before Memorial Day 2011, *id.* at pp.53-54, there were no holidays to which the memorandum would have applied between Karrer's learning of the memorandum and his departure. For this reason, Karrer suffered no damages by any refusal by Best Buy to allow Karrer those days off, and Karrer cannot demonstrate an essential element of a breach of contract claim.

      Plaintiffs contend that an implied-in-fact contract arose under which Plaintiffs were entitled to shifting holidays even prior to when either learned of the Holiday Pay Policy memorandum. This argument fails because Plaintiffs have not met their burden to establish a genuine issue of material fact with respect to whether it was the practice in any of the Best Buy stores in which either Plaintiff worked to provide shifting holidays. As noted above, Best Buy has presented evidence that the shifting holiday policy was implemented district-by-district and that it was not implemented in the Districts in which each Plaintiff was employed at a time when either worked on a Company-designated holiday. Plaintiffs have presented neither contrary evidence nor any other evidence sufficient to create a genuine issue of material fact on this subject. Although Karrer declared that he "knew other managers were getting additional days off when they worked holidays," Karrer Decl. ¶¶ 2-3, Dkt. 36-4, this is insufficient to create a genuine issue of material fact with respect to whether exempt employees in Plaintiffs' Districts or stores were receiving shifting holidays pursuant to any policy. Further, given that conclusory, speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment, *see Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979), and that Karrer testified that he did not "know of any store that followed the policy" of shifting holidays, Karrer Depo., p.103:10-11, Kundu Decl, Exh. A, Dkt. 27-2, Plaintiffs have failed to show that there is a genuine issue of material fact on these matters.

        2.      <u>Plaintiffs' Wage Theory</u>

      Plaintiffs argue that the Holiday Pay Policy memorandum guaranteed paid holidays, which constituted wages that cannot be forfeited under California Labor Code § 227.3. Although Plaintiffs argue that they have two theories of recovery, a "wage" theory and a "vacation" theory, the two theories are really the same and distill to the following: The paid day off constituted a wage that cannot be forfeited. As explained above, Plaintiffs have failed to establish that any policy providing for shifting holidays was in place in the Districts or stores in which either Plaintiff worked. Moreover, even if there

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 11-07697 JAK (MRWx) | | Date | May 24, 2012 |
|---|---|---|---|---|
| Title | Michael Karrer, et al. v. Best Buy Co., Inc. | | | |

were such a policy, it would not guarantee non-forfeitable wages. This constitutes a separate and independent ground for granting Best Buy's motion for summary judgment.

   a)  Legal Standard

 Under California Labor Code § 227.3, when an "employer policy provides for paid vacations," such vacation time is considered wages, and any vested vacation time must be paid out upon an employee's termination. Additionally, an employment policy may "not provide for forfeiture of vested vacation time upon termination." *Id.*

 In *Suastez v. Plastic Dress-Up Co.*, the California Supreme Court held "that vacation pay is not a gratuity or a gift, but is, in effect, additional wages for services performed," and "is simply a form of deferred compensation." 31 Cal. 3d 774, 779-780 (1982). An employee earns "vacation rights as soon as he has performed substantial services for his employer," *id.* at 780, and the right to vacation pay "vests as services are rendered," *id.* at 781. Under § 227.3, once such right is vested, it cannot be forfeited. The court held that the employer-defendant's policy in question, under which an employee terminated before the end of a given year would receive no vacation earned that year, violated § 227.3, because vacation pay vested as earned and payment for such pay could not be contingent on continued employment through year's end. The court noted that

> once it is acknowledged that vacation pay is not an inducement for future services, but is compensation for past services, the justification for demanding that employees remain for the entire year disappears. If some share of vacation pay is earned daily, it would be both inconsistent and inequitable to hold that employment on an arbitrary date is a condition precedent to the vesting of the right to such pay.

*Id.* at 782.

 In *Paton v. Advanced Micro Devices, Inc.*, a California Court of Appeal addressed whether a particular employer policy, which granted certain employees eight-week sabbaticals for every seven years worked, created vacation pay that could not be forfeited under § 227.3, or whether the policy created a "true sabbatical" not subject to § 227.3 and *Suastez.* 197 Cal. App. 4th 1505, 1511 (2011). The court noted that the California State Labor Commissioner had taken care to distinguish true sabbaticals from vacations, lest employers attempt to recharacterize vacations as sabbaticals or other types of days off in a "'subterfuge' to avoid having to pay vested vacation time to departing employees." *Id.* at 1512. The court attempted to define "vacation," to distinguish it from a sabbatical, and noted that "vacation, when offered, is part of the employee's basic compensation package and is typically earned in proportion to the length of employment, such as two weeks per year, 12 hours per month, or some other ratio of paid time off to length of service." *Id.* at 1518. Earning vacation "is not conditioned upon anything other than the employee's rendering services for the employer. In particular, vacation does not require the employee to be employed for a specified period of time before he becomes eligible for vacation." *Id.* at 1519. It was, therefore, different than "incentive compensation such as cash bonuses or stock option plans [that] may be used as an inducement to employees to procure efficient and faithful service," because the granting of vacation pay was deferred compensation, and not an incentive to

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 11-07697 JAK (MRWx) | Date | May 24, 2012 |
|---|---|---|---|
| Title | Michael Karrer, et al. v. Best Buy Co., Inc. | | |

longer service. *Id.* Further, the court reasoned that

> Vacation is also different from paid time off that is conditioned upon the occurrence of a specific event or granted for a particular purpose. For example, some employers give paid time off for state or federal holidays. The right to this type of time off does not vest with day-to-day employment; it vests upon the occurrence of the holiday. In a similar vein, some employers offer paid time off for illness, bereavement, or other specific reasons. The employee's right to this type of leave vests when the reason for the leave arises, as when the employee falls ill or a family member dies. Furthermore, with these conditional types of leave, the employee is typically expected to use the leave for the identified purpose. But with vacation, the employee may use the time off for any purpose.

*Id.* The court then summarized its definition of vacation:

> We take from the foregoing a rough idea of what constitutes vacation. It is paid time off that accrues in proportion to the length of the employee's service, is not conditioned upon the occurrence of any event or condition, and usually does not impose conditions upon the employee's use of the time away from work.

*Id.*

In two California Division of Labor Standards Enforcement ("DLSE") Opinion Letters provided by the parties, the California Labor Commissioner provided additional guidance on § 227.3.[2] In a 1992 letter, the Commissioner considered a policy under which a non-exempt employee accumulated two "floating holidays" each year, earned on his birthday and his employment anniversary. Cal. DLSE Opinion Letter, Apr. 27, 1992, Pl. RJN, Exh. 1, Dkt. 36-2. The holidays could be taken at any time. The Commissioner stated that "if an employer offers 'time off' which is not contingent upon the happening of a specific event (i.e., sickness, a holiday, bereavement, etc.) the time off will be treated as a vacation and will be subject to the principles of *Suastez*." *Id.* at p.3. However, if the employer's policy

> were to be enforced so as to limit the 'holiday' to the date of the happening of the event, the additional holidays would not be considered vacation. If, on the other hand, the 'holiday' need not be taken on the day of the event (or pursuant to the policy if the 'event falls on a Saturday, Sunday or during paid time off'), then the 'holidays' are 'personal' holidays and are subject to the *Suastez* principles.

*Id.* The Commissioner explained its reasoning:

> If the DLSE were to allow employers to provide 'discretionary' time off under the guise of

---

[2] DLSE Opinion letters are advisory opinions that, "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Koehl v. Verio, Inc.*, 142 Cal. App. 4th 1313, 1334 n.7 (2006).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 11-07697 JAK (MRWx) | | Date | May 24, 2012 |
|---|---|---|---|---|
| Title | Michael Karrer, et al. v. Best Buy Co., Inc. | | | |

> 'floating holidays' or 'personal days' as holidays not subject to the *Suastez* principles, it would be an invitation for the unscupulous [sic] employer to simply revise the company 'vacation' plan to a 'discretionary holiday' plan. Thus, that employer could offer the same benefit as the employer with a vacation plan, but not be burdened with the provisions of § 227.3 which require the employer to pay a terminating employee all accrued vacation pay.

*Id.*

In a 2003 letter, the Commissioner considered an employer policy that "allows employees a certain number of PTO [paid time off] days of each year based on longevity. No distinction is made between vacation, sick time, or just wanting a day off and no explanation or reason is required." Cal. DLSE Opinion Letter, May 21, 2003, p.1, Def. RJN, Exh. A, Dkt. 29. The Commissioner noted that "a policy by which an employee accumulates time which may be taken off and which time is not conditioned upon the happening of an event or chain of events is subject to the provisions of Labor Code § 227.3." *Id.* (underline in original). Such time off could not be forfeited under § 227.3, and the "rationale for this enforcement approach is that it avoids subterfuge and provides equity and fairness." *Id.* "An employer policy which, on the other hand, provides for some time off when specifically taken in conjunction with some event or chain of events (i.e. sickness, specified holidays, birthday, etc.) is not subject to the strictures of Labor Code § 227.3." *Id.* at p.2. The Commissioner wrote that employers could not evade § 227.3 "by simply lumping all time off (sick leave, holiday, birthdays, etc.) into one all-inclusive grouping." *Id.* The Commissioner held that, because use of the PTO days under the employer policy in question could be used for any purpose, including sick leave, it was subject to the provisions of California Labor Code § 233 (use of sick leave to care for family member). *Id.* at p.4. Similarly, because the time off could be used for any purpose, including vacation, it was subject to § 227.3. The Commissioner concluded by stating that "[a]ny paid time off promised which is not directly tied to an event or chain of events is considered to be subject to the provisions of Labor Code § 227.3." *Id.* at p.5.

Both parties also cite the following provision that is contained in the DLSE Enforcement Policies & Interpretations Manual:

> **Confusion of Vacation Pay With Other Leave Benefits.** . . . The DLSE has always opined that leave time which is provided without condition is presumed to be vacation no matter what name is given to the leave by the employer. Such an enforcement policy insures that leave policies which are nothing more than vacation policies under a different name, are not instituted as subterfuges to defeat the provisions of Labor Code § 227.3 and the conclusions of the California Supreme Court in *Suastez*. Thus, there must be an objective standard by which it can be established that the leave time is attributable to holidays, sick leave, bereavement leave or other specified leave. Tying the right to take the time to a specific event or chain of events such as allowing a vacation period for the Thanksgiving weekend would suffice to satisfy the test.

§ 15.1.12, Def. RJN, Exh. B, Dkt. 29; Pl. RJN, Exh. 2, Dkt. 36-2 (underline and bold in original).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 11-07697 JAK (MRWx) | Date | May 24, 2012 |
|---|---|---|---|
| Title | Michael Karrer, et al. v. Best Buy Co., Inc. | | |

In general, when a salaried employee works additional time without compensation, in the absence of an express contract providing additional pay for such work, the employee is entitled to no additional compensation; "there is a presumption that the employee volunteers such services, or that the salary or other compensation provided for in the (original) contract is intended by the parties to compensate him also for the extra work." *Sieck v. Hall*, 139 Cal. App. 279, 295 (1934); *see McCoy v. West*, 70 Cal. App. 3d 295, 304 (1977) ("[I]t is the general rule that where, as here, the employee rendering the additional services receives a regular salary and the services rendered are similar or nearly similar to the employee's regular duties, the obligation to pay for the additional services must be based upon an express contract."). The DLSE has referred to this as a "common law" presumption. Cal. DLSE Opinion Letter, Oct. 1, 1997, p.2, *available at* http://www.dir.ca.gov/dlse/opinions/1997-10-01.pdf.[3]

      b)      Analysis

At the summary judgment stage, the Court views the evidence in the light most favorable to the non-moving party. For this reason, the Court assumes for the purpose of this motion that the Holiday Pay Policy memorandum constituted an official Best Buy policy that was intended not merely as a "scheduling tool," but as a guarantee of certain shifting holidays. Even with this assumption, the Holiday Pay Policy memorandum does not create an entitlement to a vacation day, which would constitute wages that would not be forfeitable under § 227.3.

The holidays created by the Holiday Pay Policy memorandum are not vacation under *Paton v. Advanced Micro Devices*. The days were not earned in proportion to length of employment, nor were they conditioned only upon rendering services for Best Buy over a period of time. Instead, the days were "conditioned upon the occurrence of a specific event" *and* were "granted for a particular purpose." The holidays were conditioned upon the occurrence of one of the four Company designated holidays on which stores were open, and also upon the manager's working on that holiday. The particular purpose of the shifting holiday was to allow an employee to move his Company designated holiday to another date within 30 days of the official holiday. Thus, for example, an employee could shift his or her Independence Day from July 4 to July 10, in case he or she needed to staff a store for an Independence Day sale when hourly employees were on vacation. Consequently, the purpose of the shifting holiday was not to grant a managerial employee an additional vacation day, to be added to a bank of accrued vacation days that could be taken at any time for any purpose. Instead, the purpose was to allow an employee to elect to move a Company designated holiday to another date within a 61-day window, *i.e.,* within 30 days before or after the holiday in order to meet the needs of store operations. The shifting holiday was, therefore, a "conditional type of leave," under *Paton*. And, this shifting holiday was unlike the "floating holidays" or "personal days" discussed in the 1992 DLSE opinion letter, which operated just like typical vacation days. That the shifting holidays are tethered to a Company designated holiday on which an employee works, provides the "objective standard" required by the Manual § 15.1.12. That the holidays had to be taken within a particular time period further supports this position. Additionally, Plaintiffs have presented no evidence that Best Buy's use of the shifting holidays was a subterfuge to avoid paying out accrued vacation pay, or was an inequitable or

---

[3] This Opinion Letter, unlike the other two considered by the Court, was not cited or provided by the parties.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 11-07697 JAK (MRWx) | Date | May 24, 2012 |
|---|---|---|---|
| Title | Michael Karrer, et al. v. Best Buy Co., Inc. | | |

unfair means of providing vacation pay. To the contrary, the Policy provided a means of compensating managers for time for which they would not otherwise have been paid as salaried employees. Thus, a manager who worked on a holiday was not entitled to compensation above his or her salary. For these reasons, the concerns expressed in the DLSE's 2003 opinion letter, and in § 15.1.12 of its Manual, are not implicated. Accordingly, because the shifting holidays are not vacation wages, they fall outside the requirements of *Suastez* and § 227.3. California law does not require that the shifting holidays in this case be paid out upon termination, nor does it preclude the forfeiture of such holidays. The Holiday Pay Policy memorandum's provision that the holiday will be lost if not used, and will not be paid out upon termination, is not unlawful.

To the extent that Plaintiffs' "wage" theory is distinct from their "vacation" theory, the unused shifting holidays do not constitute wages owed under the Labor Code. It could be argued that, under *Paton*, the right to the shifting holiday vests upon the occurrence of the Company-designated holiday on which an employee worked. Thus, the vested holiday could be seen as a wage that must be paid out. However, because any such vested shifting holidays are not vacation days under § 227.3 and *Suastez*, there is no rule that such shifting holidays cannot be forfeited. Instead, without the protection of § 227.3, any such vested shifting holidays are subject to the common law presumption of *Sieck v. Hall* and *McCoy v. West*, under which any entitlement to those wages would occur only under the express terms of the employment agreement. In this case, that agreement would be the Holiday Pay Policy memorandum, which provides that the holiday will be lost if not used, and will not be paid out upon termination. Thus, any right to wages that the Holiday Pay Policy memorandum created was conditioned on the possibility of losing those wages within 30 days of the Company designated holiday.

To clarify by way of example: If a hypothetical exempt employee were typically guaranteed Independence Day off, but for some reason were required to work that day, the right to have taken that day off would not transform into a vested wage that would have to later be paid out in the same manner as a vacation day. The employee would simply lose his or her ability to take off Independence Day; federal holidays not taken off do not become non-forfeitable vacation days under § 227.3. *See Paton*, 197 Cal. App. 4th at 1519. Although that hypothetical employee might have a breach of contract claim, if the entitlement to Independence Day off were guaranteed by an employment contract -- or by an employee manual that constituted a contract -- the remedy would not be under the California Labor Code sections Plaintiffs cite. Plaintiffs' case is no different from this hypothetical example, except that, instead of being given Independence Day off, the Holiday Pay Policy memorandum allows Plaintiffs to schedule their own Independence Day anytime from June 4 through August 3. Thus, Plaintiffs have no right to a vested wage to be paid out upon termination.

Without the protection of § 227.3, any entitlement to the shifting holidays is forfeitable, and unused holidays need not be paid out upon termination. For instance, sick leave days, which are not subject to § 227.3, need not accrue, and are forfeitable. *See Bidwell v. Cal. ex rel. Dep't of Youth Auth.*, 164 Cal. App. 3d 213, 223 (1985). Similarly, stock options and cash bonuses may be forfeitable according to the terms of the employment contract granting rights to options and bonuses. *See Paton*, 197 Cal. App. 4th at 1519. Thus, because the shifting holidays are not vacation days under § 227.3 and *Suastez*, any entitlement to those days may be forfeited, as provided by the Holiday Pay Policy memorandum.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 11-07697 JAK (MRWx) | Date | May 24, 2012 |
|---|---|---|---|
| Title | Michael Karrer, et al. v. Best Buy Co., Inc. | | |

### B. Plaintiff's Six Causes of Action

In this section, the Court considers Plaintiffs' six causes of action in light of the foregoing analysis. In considering these causes of action, the Court notes that certain claims are not before the Court. For instance, Plaintiffs have not argued, nor presented evidence, that they sought to take off certain shifting holidays pursuant to the Holiday Pay Policy memorandum after having worked Company-designated holidays, and that Best Buy in bad faith denied them the opportunity to take such days off. Additionally, Plaintiffs have not argued that Best Buy had any obligation to provide Plaintiffs with documentation of the shifting holiday policy, and that Best Buy failed to meet this obligation. Nor have Plaintiffs argued that Best Buy induced Plaintiffs into working Company-designated holidays with the promise of receiving shifting holidays, and that, by failing to provide such holidays, Best Buy has been unjustly enriched.

#### 1. Failure to Pay Wages Owed

Plaintiffs bring their failure to pay wages owed claim under five California Labor Code provisions: §§ 201, 203, 216, 218.5, and 227.3. § 201(a) provides that "wages earned and unpaid at the time of discharge are due and payable immediately" on an employee's discharge. § 203(a) creates a penalty for failure to pay in accordance with § 201 and other Labor Code sections. § 216 makes it a misdemeanor not to pay wages due. § 218.5 allows for the award of attorney's fees in an action to collect wages. § 227.3, as discussed above, makes vacation pay non-forfeitable.

For the reasons described above, the inability to take shifting holidays did not constitute a non-forfeitable, vested wage under the California Labor Code. Thus, there was no right to payment upon discharge under § 201, no penalty available under § 203, no crime under § 216, no attorney's fees available under § 218.5, and no unlawful forfeiture under § 227.3.

#### 2. Failure to Timely Pay Wages Owed Upon Employment Termination

Plaintiffs bring their failure to timely pay wages owed upon employment termination claim under three California Labor Code provisions: §§ 201, 202, 203. § 201(a) provides that "wages earned and unpaid at the time of discharge are due and payable immediately" on an employee's discharge. § 202(a) requires payment within 72 hours of wages owed upon an employee's quitting. § 203(a) creates a penalty for failure to pay in accordance with § 201, § 202, and other Labor Code sections. Because Plaintiffs were not entitled to wages from the shifting holidays, there was no right to payment upon discharge under § 201 or upon quitting under § 202, and no penalty available under § 203.

Best Buy also argues that Karrer is still employed, and because he has not been terminated, the pay-out upon termination provisions of §§ 201, 201, 203, and 227.3 do not apply to him. Plaintiffs acknowledge that Karrer has not been terminated, but nonetheless argue that he can seek injunctive relief to prevent him from not being paid out when he is terminated or resigns. Opp'n, p.13, Dkt. 36. Indeed, Plaintiffs seek injunctive relief pursuant to § 17200. However, because Karrer is not entitled to payment of any shifting holidays as wages, there is no unlawful practice to enjoin under § 17200.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 11-07697 JAK (MRWx) | Date | May 24, 2012 |
|---|---|---|---|
| Title | Michael Karrer, et al. v. Best Buy Co., Inc. | | |

      3.    <u>Maintaining and Implementing a Vacation Policy That Provides for the Forfeiture of Unused Vacation</u>

Plaintiffs bring their claim for maintaining and implementing a vacation policy that provides for the forfeiture of unused vacation under California Labor Code § 227.3. For the reasons described above, the Holiday Pay Policy memorandum is not subject to § 227.3.

      4.    <u>Breach of Contract</u>

Plaintiffs argue that the Holiday Pay Policy memorandum created a contract between them and Best Buy, which Best Buy breached. As discussed above, the memorandum did not create a contract. Estrada did not know of it during his employment. Karrer learned of it only in February 2011, and because there were no Company-designated holidays on which he worked between February 2011 and his leave in May 2011, even if the memorandum did constitute a contract, it could not have been breached by Best Buy, and Karrer suffered no damages. Nor have Plaintiffs presented evidence of an implied-in-fact contract guaranteeing shifting holidays off. Instead, the Policy was only one that could be adopted by each District, and it was not adopted in either District in which Plaintiffs worked at a time that either Plaintiff worked on a designated holiday. Thus, Plaintiffs' contract claim fails.

Plaintiffs argue that Karrer can seek damages for anticipatory breach of the Holiday Pay Policy memorandum, under California Civil Code § 1440 ("If a party to an obligation gives notice to another, before the latter is in default, that he will not perform . . . such other party is entitled to enforce the obligation").

> While an actual breach of contract cannot occur until the time for performance has arrived, an anticipatory repudiation of the contract, or anticipatory breach, occurs before performance is due under the contract and results in a total breach. A party anticipatorily breaches a contract expressly by unequivocally refusing to perform, or impliedly by conduct where the promisor puts it out of his power to perform so as to make substantial performance of his promise impossible. A promisor's anticipatory repudiation permits the promisee to recover damages immediately for a total breach of contract without performing or offering to perform any conditions precedent under the contract.

*County of Solano v. Vallejo Redev. Agency*, 75 Cal. App. 4th 1262, 1275-76 (1999). "[I]n order to obtain damages in an action for anticipatory breach, the nonbreaching party must prove that it had the ability to perform under the contract." *Id.* at 1276; *see also* 1 WITKIN SUMMARY OF CALIFORNIA LAW § 862 (10th ed. 2005) (a party suing for anticipatory breach "cannot recover damages without presenting evidence sufficient to establish that, but for the breach, he or she was ready, willing, and able to perform as required by the contract").

Plaintiffs' argument fails. First, Plaintiffs did not plead this anticipatory breach theory in their Second Amended Complaint; Plaintiffs' theory there was that Best Buy had already breached by not allowing Plaintiffs their shifting holidays. "Where the action is based on an anticipatory breach, the

Case 2:11-cv-07697-JAK-MRW   Document 53   Filed 05/24/12   Page 13 of 14   Page ID #:1525

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 11-07697 JAK (MRWx) | Date | May 24, 2012 |
|---|---|---|---|
| Title | Michael Karrer, et al. v. Best Buy Co., Inc. | | |

complaint should allege defendant's repudiation." 4 WITKIN CALIFORNIA PROCEDURE § 534 (5th ed. 2008). Plaintiffs did not plead that Best Buy had repudiated any future performance, in advance of performance; rather, they pleaded that the time for performance already occurred and that Best Buy did not perform. Thus, their claim was one for actual breach, not anticipatory breach. Second, Plaintiffs have not established that Karrer has the ability to perform under the contract, which is a prerequisite to his suing for anticipatory breach. Karrer is on leave; Plaintiffs have offered neither evidence that he will return from leave nor evidence that, when and if Karrer returns, Best Buy will require him to work Company designated holidays and will not allow him a corresponding shifting holiday now that the Policy has been adopted in his District. Thus, Karrer cannot seek relief for anticipatory breach.

### 5.    Unlawful Business Practices

Plaintiffs' claim for unlawful business practices, Cal. Bus. & Prof. Code § 17200, *et seq.*, is derivative of their other causes of action. Because Plaintiffs have not established a claim for unpaid wages, their § 17200 claim fails.

### 6.    Private Attorneys General Act

Plaintiffs seek penalties pursuant to the Private Attorneys General Act ("PAGA"), Cal. Labor Code § 2699, *et seq.* PAGA allows an "aggrieved employee" to sue an employer "on behalf of himself or herself and other current or former employees." Cal. Labor Code § 2699(a). The California Labor and Workforce Development Agency ("LWDA") receives 75% of the plaintiff's recovery, and the aggrieved employees receive the remaining 25%. *Id.* at 2699(i). The California Legislature enacted PAGA to ensure compliance with the Labor Code. *Arias v. Superior Court*, 46 Cal. 4th 969, 980 (2009). A private plaintiff suing under PAGA acts as a "proxy or agent of the state's labor law enforcement agencies," "essentially bringing a law enforcement action designed to protect the public." *Id.* at 986. The "employee plaintiff represents the same legal right and interest as state labor law enforcement agencies -- namely, recovery of civil penalties that otherwise would have been assessed and collected by the" LWDA. *Id.* "The employee plaintiff may bring the action only after giving written notice to both the employer and the" LWDA, and only if the LWDA decides not to pursue an enforcement action. *Id.*; *see also* Cal. Labor Code § 2699.3(a). Because Plaintiffs have not established a Labor Code violation, their PAGA claim fails.

### C.    Rule 56(d)

Under Rule 56(d), "a trial court may order a continuance on a motion for summary judgment if the party requesting a continuance submits affidavits showing that, without Rule 56 assistance, it cannot present facts necessary to justify its claims." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).

> The requesting party must show: (1) it has set forth in affidavit form the specific facts it
> hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after
> facts are essential to oppose summary judgment. Failure to comply with these
> requirements is a proper ground for denying discovery and proceeding to summary

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV 11-07697 JAK (MRWx) | Date | May 24, 2012 |
|---|---|---|---|
| Title | Michael Karrer, et al. v. Best Buy Co., Inc. | | |

judgment.

*Id.*

Plaintiffs seek 56(d) relief to depose Amy Newman, former in house counsel at Best Buy, who allegedly drafted the Holiday Pay Policy memorandum. Plaintiffs seek "to find out whether this document [the Holiday Pay Policy memorandum] was intended to be a 'policy,' or a 'scheduling tool' as Defendant argues." Pl. Supp. Brief, p.4:13-15, Dkt. 49. The analysis of the Holiday Pay Policy memorandum above assumed that the memorandum created a policy, yet found that even if it did, Plaintiffs had no entitlement to any missed shifting holidays, or compensation in lieu thereof. Thus, Newman's deposition is not "essential to oppose summary judgment."[4]

Accordingly, the Court DENIES Plaintiffs' request for additional time under Rule 56(d).

**IV.    Conclusion**

For the foregoing reasons, the Court GRANTS Best Buy's motion for summary judgment. Defense counsel shall submit a proposed judgment within 10 days.

**IT IS SO ORDERED.**

:

Initials of Preparer    ak

---

[4] Best Buy argues that Plaintiffs did not submit the required affidavit. In their Court-ordered supplemental brief, Dkt. 49, Plaintiffs provided no such affidavit. However, in their earlier *ex parte* application for additional time under Rule 56(d), Plaintiffs did provide an affidavit. Cotter Decl., Ex Parte App. to Supp. Briefing Under Rule 56(d), Dkt. 46-1. This meets the requirements of Rule 56(d). The parties also disagree on whether Plaintiffs were diligent in discovery, or whether Best Buy was dilatory. Because the information sought through the proposed deposition will not have an effect on the analysis in this Order, the Court does not address this disagreement.